IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL LANCE LOPEZ,                   :
    Plaintiff,                        :
                                      :
v.                                    :    CIVL ACTION NO. 25-CV-7311
                                      :
KYLE A. RUSSEL, *et al.*,             :
    Defendants.                       :

**MEMORANDUM**

**MCHUGH, J.**                                                    **MARCH 16, 2026**

*Pro se* Plaintiff Daniel Lance Lopez, who is currently incarcerated at Lehigh County Jail,
filed this civil action naming Warden Kyle A. Russel, Corrections Officer Reed Miller, Lehigh
County Jail ("LCJ"), the "Owners of Lehigh County Jail," and "Prime Care Medical (nurses)"
("PrimeCare"),[1] as Defendants. (ECF No. 2.) Lopez seeks leave to proceed *in forma pauperis*.
(ECF Nos. 1, 3.) For the following reasons, the Court will grant Mr. Lopez leave to proceed *in
forma pauperis*, dismiss his federal claim against LCJ with prejudice, dismiss the state claim
against LCJ without prejudice and dismiss all claims against PrimeCare, "Owners of Lehigh
County Jail," and Warden Russel without prejudice. Mr. Lopez's Fourteenth Amendment
deliberate indifference claim and negligence claim against Miller will be permitted to proceed.

I.      FACTUAL ALLEGATIONS[2]

In April 2025, Mr. Lopez was incarcerated in LCJ's "Unit 2A." (Compl. at 4.) On or
around April 18 and 21, Lopez noticed a small bump on his left buttock. (*Id.*) It started to get

---

[1] The Court understands Lopez to refer to PrimeCare Medical, Inc.

[2] The allegations set forth in this Memorandum are taken from the Complaint ("Compl.").
(ECF No. 2). The Court adopts the pagination assigned by the CM/ECF docketing system.
Passages quoted from the Complaint have been corrected for spelling.

larger, and Lopez told his Unit Manager, Miller, about it. (*Id.*) Miller allegedly responded that it was not Miller's problem but a medical problem. (*Id.*) Lopez submitted a medical request to PrimeCare on April 18 to 21 "to no avail" because the "slip was never returned to [him] nor was [he] ever seen." (*Id.*) Lopez continued to work in the kitchen until May 7, 2025, when he informed the kitchen supervisors Krystal and Mitchell Good that he was in severe pain and discomfort. (*Id.*) They instructed him to inform the officer on rotation, Miller. (*Id.*) Lopez asked Miller to call medical because of "excruciating pain," but Miller allegedly refused and told Lopez to get back to work. (*Id.*)

After Mr. Lopez finished his shift at 6:30, he waited for the medical cart to come around. (*Id.*) When it did, Lopez told the nurse on duty, Chad, that he had been in agonizing pain since April 18. In his Complaint, Lopez appears to assert that he related to Nurse Chad that he had put in multiple sick calls to no avail and that he had informed Miller about his condition "multiple times." (*Id.* at 5.) He told Nurse Chad that he had been "unable to work, sleep, or barely walk due to the excruciating pain." (*Id.*) Nurse Chad sent Lopez to the medical unit. (*Id.*) In the medical unit, when Nurse Debra checked the wound and his entire left buttock was inflamed, red, hard, and hot to the touch all the way to the groin area. (*Id.*) Lopez claims that he had a fever of 110 degrees, his heart rate was irregular, and he was septic. (*Id.*) He required emergency hospitalization, where he received a CT scan, and surgery was performed. (*Id.*) After four days, he was released from the hospital to LCJ. (*Id.*) He was not placed in medical isolation but was put in Unit 2B. (*Id.*) Mr. Lopez claims that he had "a gaping hole" on his left buttock and contracted a MRSA infection two months later. (*Id.*)

Mr. Lopez asserts that he filed a grievance at LCJ, but it was denied because he failed to provide an event date and included too many issues in the one grievance. (*Id.* at 3.) He

submitted an appeal of the decision on October 16, 2025, but it was rejected "[b]ecause they deemed that [his] medical care was appropriate." (*Id.*)

Lopez filed this Complaint pursuant to 42 U.S.C. § 1983, alleging that his injuries could have been avoided but for the "gross negligence" of Lehigh County Jail, Owners of Lehigh County Jail, Kyle A. Russel, Reed Miller, and Prime Care Medical. (*Id*. at 5.) He requests money damages for pain, suffering, and mental anguish. Lopez also asks to be released from jail and for all defendants to "be held accountable and properly [reprimanded]."[3] (*Id*. at 4.)

## II.   STANDARD OF REVIEW

The Court will grant Mr. Lopez leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Under 28 U.S.C. § 1915(e)(2)(B), the court must screen the Complaint and dismiss it if it is frivolous, malicious, fails to state a claim for relief, or seeks damages from an immune defendant. *Id.* § 1915(e)(2)(B)(i)-(iii). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (*per curiam*); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[3] Lopez seeks his release, but that relief is not appropriately sought in a civil rights action. *See Garrett v. Murphy*, 17 F.4th 419, 430 (3d Cir. 2021) ("[W]henever a plaintiff pleads a violation of § 1983 and effectively seeks habeas relief, the plaintiff fails to state a § 1983 claim. Instead, the prisoner's only federal remedy is through a writ of habeas corpus after exhausting state remedies.").

[4] Because Lopez is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.

(quotations omitted).  At this stage, the Court accepts the facts alleged in Mr. Lopez's complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  Because Lopez is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  In reviewing a *pro se* complaint, the Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  (quoting *Mala*, 704 F.3d at 244).

### III.  DISCUSSION

Mr. Lopez alleges "gross negligence" by the Defendants, which sounds in state law and may include claims for medical malpractice and negligence.  The Complaint may also be fairly read to include claims for deliberate indifference to a serious medical need.[5]  *See Vogt*, 8 F.4th at 185.  Lopez files his Complaint pursuant to § 1983, the statute enabling a plaintiff to raise claims for violations of the United States Constitution.  (ECF No. 2 at 1.)  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting

---

[5] It would appear from state court records that Lopez was a pretrial detainee at the time of his infection, *see Commonwealth v. Lopez*, CP-39-CR-0000673-2025 (C.P. Lehigh), and the Fourteenth Amendment would thus govern his constitutional claim for deliberate indifference to a serious medical need.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis.  *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, meaning a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims brought against that defendant.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  In other words, "[e]ach Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct."  *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 677).

### A.      Federal Claims Under § 1983

#### 1.      Lehigh County Jail

Mr. Lopez alleges a constitutional claim against Lehigh County Jail, but the jail does not qualify as a "person" under § 1983.  *Edwards v. Bucks Cnty. Corr. Facility*, No. 19-4923, 2019 WL 5579486, at *2 (E.D. Pa. Oct. 29, 2019) ("Bucks County Correctional Facility is not an entity susceptible to suit under § 1983."); *see also Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976)).  Accordingly, this claim will be dismissed with prejudice.

#### 2.      *Monell* Claims

##### a.      "Owners of Lehigh County Jail"

The Court understands Lopez's claim against the "Owners of Lehigh County Jail" to allege a claim against Lehigh County.[6]  Local governments like Lehigh County can be liable as

---

[6] A *pro se* complaint must be construed liberally.  *See Vogt*, 8 F.4th at 185.  The Court thus considers this claim to be one against Lehigh County because it operates LCJ.  *See* Lehigh County, Pennsylvania, "Department of Corrections Home,"

"persons" under § 1983, but this liability extends only to "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 665-83 (1978). This limitation is based on the well-established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60; *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Rather, to state a § 1983 claim against a municipality, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479.[7]

Mr. Lopez has not alleged a plausible *Monell* claim against Lehigh County. Nowhere in his factual allegations does he mention any custom or policy by the County that impacted his infection or how it was handled. *See McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009) (explaining that a plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard). Further, he does not allege (nor does

---

https://www.lehighcounty.org/departments/corrections (last visited on Mar. 2, 2026). The County's Office of the Director of the Department of Corrections is responsible for overall administration, compliance with state and federal standards and laws, and fiscal stewardship of LCJ. *Id.*

[7] A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). Lopez does not allege any facts suggesting that the County harbors responsibility for his injury due to a failure to supervise, train, or discipline its employees.

anything in his Complaint suggest) that a custom or policy caused his injuries. *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) ("A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996))). As a result, his claim against the County cannot survive screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and will be dismissed.

### b.      PrimeCare

Similarly, a private corporation under contract to provide medical services at a jail like PrimeCare may be liable under § 1983 in certain circumstances, but the United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor)). Rather, to state a § 1983 claim against a private health care company like PrimeCare, Lopez must allege that it had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).[8]

---

[8] Like claims against municipalities, a plaintiff may also state a basis for liability in the context of a contract medical provider by "alleging failure-to-supervise, train, or discipline," *see*

Mr. Lopez does not allege that PrimeCare had any policy which caused a constitutional violation under § 1983.  Rather, Lopez claims that PrimeCare and/or its presumed nursing staff became involved in his treatment on May 7 when Lopez told the medicine cart nurse about his pain, and that nurse sent him to the medical unit.  (Compl. at 5.)  After another nurse examined him in the medical unit, he was transferred to a hospital.  (*Id*.)  Lopez asserts that, upon release from the hospital, he was not placed in medical isolation but "was put on unit 2B instead."   (*Id*.)  To the extent that Lopez is trying to claim wrongdoing by the nurses in those events, PrimeCare cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.  *Sims*, 635 F. App'x at 20.  Lopez's claim against PrimeCare is not plausible as pleaded and will be dismissed without prejudice.

### 3.    Claim Against Warden Kyle A. Russel

It appears that Mr. Lopez names Warden Russel as a defendant because he holds a position of supervisory authority in LCJ.  "[A] director cannot be held liable 'simply because of his position as the head of the [agency].'" *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).  Nor can liability under § 1983 be predicated on a respondeat superior basis.  *See, e.g., Chavarriaga v. N.J. Dep't of Corr*., 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*).  Claims "against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  A supervisor may "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in

---

*Forrest*, 930 F.3d at 106, but Lopez alleges no facts showing that the PrimeCare failed to train, discipline or supervise its employees such that it caused a constitutional violation here.

charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015) (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).  A supervisor may also be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K.*, 372 F.3d at 586 (alteration in original)).[9]

In his Complaint, Lopez does not assert that Russel had any role at all in the events leading to his illness, hospitalization, and subsequent infection.  *See Rode*, 845 F.2d at 1207.  He does not claim that Russel directed the actions of anyone else, or that he had knowledge of or acquiesced in their actions.  *See Barkes*, 766 F.3d at 316.  In fact, Lopez makes no mention of Russel in the Complaint except where he broadly refers at the Complaint's end to the Defendants' "gross negligence" and where he states that the Warden plays a role in the grievance process.  (Compl. at 3, 5.)  A prison official's involvement in the grievance process is not sufficient to allege liability under § 1983 for the events that gave rise to the grievance, however. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in

---

[9] This type of liability also includes a failure to supervise or train, but a plaintiff asserting such a claim must identify the supervisory or training policy the supervisor failed to employ and "then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory [or training] practice or procedure." *Barkes*, 766 F.3d at 317 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); then citing *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001)); *see also Chavarriaga*, 806 F.3d at 227.  As noted before, Lopez does not identify any policy or custom that was or was not heeded by Defendants.

9

the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].”); *see also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) (“Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.”); *Whetstone v. Ellers*, No. 08-2306, 2009 WL 3055354 at *8 (M.D. Pa. Sept. 24, 2009) (“In the Third Circuit, merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim.”).  Accordingly, Lopez's claim against Russel will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4.    Claim Against Corrections Officer Miller

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent “unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.” *Id.* at 837.  “Mere negligence is not sufficient.” *Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (*per curiam*) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  “A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.” *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged “where the prison

10

official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Mr. Lopez avers that he first approached Miller about a growing bump on his buttock on or about April 18 to 21. (Compl. at 4.) Miller responded that it wasn't his problem but a medical problem. Lopez states that he attempted to obtain medical care by submitting a slip, but that "the slip was never returned to [him] nor was [he] ever seen." (*Id*.) Lopez alleges that he next notified Miller about his condition while working in the kitchen on May 7. (*Id*.) After consulting with his supervisors, Lopez asked Miller to "call medical" because he was in excruciating pain, but Miller shrugged off Lopez's request and told him to get back to work. (*Id*.) Lopez claims that he had told Miller about his condition "multiple times." (*Id.* at 5.)

Lopez's allegation about the first interaction with Miller concerning a "growing bump" falls short of stating a plausible claim for deliberate indifference to a serious medical need. There is nothing to suggest that the "growing bump" was a "serious medical need" at that point, *see Monmouth Cnty. Corr.*, 834 F.2d at 347. And in any event, Miller is not alleged to have "intentionally refuse[d] to provide," delay[ed]," or "prevent[ed]" Lopez from receiving medical treatment on that occasion. *Rouse*, 182 F.3d at 197. Rather, Miller directed Lopez to seek medical help (which he did—unsuccessfully, but Lopez does not appear to attribute that lack of treatment to Miller).

But  the same cannot be said with respect to the facts alleged about the second encounter. Mr. Lopez claims that he was in extreme pain and discomfort and complained to his kitchen supervisors, who directed him to Miller.  (Compl. at 4.)  After Lopez apparently told Miller he was in agonizing pain, Miller refused to call medical and instructed Lopez to get back to work. (*Id*.)  Lopez had to wait until the end of his shift and for the medical cart to make its rounds before obtaining treatment.  (*Id*.)  By that time, Lopez ran a high fever, his entire left buttock was inflamed and hot to the touch, and he was septic, requiring emergency hospitalization and surgery.  (*Id*. at 5.)  Although Lopez conveys few details about his conversation with Miller on May 7, he also avers that he told Miller "multiple times" about his condition before that time. (*Id*.)  At the screening stage, Lopez has pleaded facts plausibly alleging that Lopez made Miller aware of being in excruciating pain, and that Miller "intentionally refuse[d]" or caused a delay in treatment for non-medical reasons, e.g., so that Lopez could get back to work.  *See Bacon v. Carroll*, 232 F. App'x 158, 160 (3d Cir. 2007) (*per curiam*) (citing *Rouse*, 182 F.3d at 197); *Conley-Reifer v. Butler Cnty. Prison*, No. 23-1804, 2024 WL 5347837, at *9 (W.D. Pa. Nov. 12, 2024) (denying motion to dismiss deliberate indifference claim where plaintiff alleged she told corrections officer she was having a mental health crisis and the officer became argumentative and only emailed a professional, which delayed treatment); *Adams v. Metellus*, No. 23-2142, 2025 WL 3176085, at *9 (E.D. Pa. Nov. 13, 2025) (declining to dismiss deliberate indifference claim against corrections officer where plaintiff asked to be examined by medical staff after attack by fellow inmate but officer denied medical treatment and locked him in a holding cell). Lopez's Fourteenth Amendment claim for deliberate indifference to a medical need may proceed against Miller.

12

### B.    State Law Claims

### 1.    Medical Malpractice Against PrimeCare

The Court will construe Lopez's claim for negligence against PrimeCare as a medical malpractice claim.  To state a claim for medical malpractice under Pennsylvania law, a plaintiff must allege: (1) the medical professional owed a duty to the patient; (2) the medical professional breached the duty; (3) the breach was the proximate cause of the harm suffered; and (4) the damages suffered were a direct result of the harm.  *Brown v. Hahnemann Univ. Hosp.*, 20 F. Supp. 3d 538, 542 (E.D. Pa. 2014) (citing *Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997)).  Put differently, "to prevail on a claim of medical negligence, the plaintiff must prove, *inter alia*, that the defendant's treatment fell below the appropriate standard of care—that is, varied from accepted medical practice."  *Cramer v. Prince*, No. 23-1988, 2024 WL 4109335, at *8 (M.D. Pa. Sept. 6, 2024) (cleaned up).  Under state law, a plaintiff may pursue medical negligence claims against medical corporations for medical malpractice and vicarious liability. *Kinney v. County of Berks*, No. 22-2566, 2025 WL 270055, at *17 (E.D. Pa. Jan. 21, 2025) (citing *Thompson v. Nason*, 591 A.2d 703, 708 (Pa. 1991) (medical malpractice); *Valles v. Albert Einstein Med. Ctr.*, 758 A.2d 1238, 1244 (Pa. Super. 2000) (vicarious liability)).

Lopez claims that he submitted "a medical request to (PrimeCare) on or about 4/18/25-4/21/25," but it was "to no avail" because "the slip was never returned to [him] now was [he] ever seen." (Compl. at 4.)  He later contends that he "put in multiple sick calls." (*Id.* at 5.)  To the extent that Lopez relies on these bare allegations as the basis for his medical malpractice claim, they are vague and factually under-pleaded.  It is unclear from the pleadings what, exactly, Lopez is alleging went wrong with respect to a medical duty owed to him and whom he holds responsible.  Further, as for his interactions with Nurse Chad and Nurse Debra on May 7,

Lopez does not allege any standard of care for treatment that medical staff breached when they cared for him; rather, he alleges that Nurse Chad responded by sending him to the medical unit, and, after Nurse Debra examined him, he was sent to the hospital.  (*Id*.); *see Brown*, 20 F. Supp. 3d at 542 (requiring plaintiff to plead breach of a medical duty and that the breach proximately caused plaintiff's injuries).  Further, Hill's allegations do not allege a plausible claim against PrimeCare under Pennsylvania's corporate malpractice under Pennsylvania law.[10]  For these reasons, the claim cannot proceed and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.    Negligence Claim Against LCJ, the County, Russel, and Miller

Mr. Lopez broadly alleges that, but for the negligence of the "Defendants," he would not have suffered his injuries.  (Compl. at 5.)  "For a party to prevail in a negligence action . . . the plaintiff must establish the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009).

Considering that the Court has decided that Lopez has stated a plausible deliberate indifference claim against Miller for the purposes of screening, the negligence claim against Miller may proceed.  *See Ravert v. Monroe County*, No. 20-889, 2022 WL 4647431, at *16 (M.D. Pa. Sept. 30, 2022) ("Having concluded that at least three Constitutional deliberate

---

[10]  *See Robinson v. Corizon Health, Inc.*, No.12-1271, 2016 WL 7235314, at *14 (E.D. Pa. Dec. 13, 2016) (explaining a hospital may be liable under a corporate malpractice theory if it breached "(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients"); *see also Thompson v. Nason*,  591 A.2d 703, 708 (Pa. 1991*)* ("The hospital's negligence must have been a substantial factor in bringing about the harm to the injured party." (citing *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978)).

indifference claims survive (against the Medical Director, Dr. Wloczewski, and PrimeCare) the supplemental state law negligence claims will also remain."). Miller has not, however, stated a negligence claim against any other defendant. As noted above, he only mentions LCJ, the County ("Owners of Lehigh County Jail"), and Russel by name in passing at the end of his Complaint when he claims that they were all "grossly negligent." (*Id*.) He fails to state how any of those particular defendants breached a duty of care owed to Lopez and that the breach caused his injuries. Consequently, the Court will dismiss the negligence claims against LCJ, the County ("Owners of Lehigh County Jail"), and Russel pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Lopez leave to proceed *in forma pauperis* and dismiss his federal claim against Lehigh County Jail with prejudice, his state claim against Lehigh County Jail without prejudice, and all other claims against "Prime Care Medical (nurses)," "Owners of Lehigh County Jail," and Kyle A. Russel without prejudice. The Fourteenth Amendment deliberate indifference claim and negligence claim alleged against Reed Miller will be allowed to proceed at this time. Lopez will be given the option of proceeding on his claims against Miller or filing an amended complaint in the event he seeks to amend the claims that have been dismissed without prejudice. An appropriate order follows, which provides further instruction as to amendment.

BY THE COURT:

/s/ Gerald Austin McHugh

GERALD A. MCHUGH, J.

15