**IN THE UNITED STATES DISTR ICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL LANCE LOPEZ,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVL ACTION NO. 25-CV-7311** |
| | : | |
| **KYLE A. RUSSEL, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**MCHUGH, J.** **SEPTEMBER 14, 2026**

*Pro se* Plaintiff Daniel Lance Lopez filed this action in December 2025, alleging violations of his civil rights and negligence by various Defendants while he was incarcerated at the Lehigh County Jail. (*See* ECF No. 2.) He named Warden Kyle A. Russel, Corrections Officer Reed Miller, Lehigh County Jail ("LCJ"), the "Owners of Lehigh County Jail," and "Prime Care Medical (nurses)" as Defendants, and sought leave to proceed *in forma pauperis*. *Lopez v. Russel*, No. 25-7311, 2026 WL 734064, at *1 (E.D. Pa. Mar. 16, 2026). The Court granted Lopez leave to proceed *in forma pauperis*, dismissed the federal claim against LCJ with prejudice, dismissed the state claim against LCJ without prejudice and dismissed all claims against "Prime Care Medical (nurses)," "Owners of Lehigh County Jail," and Warden Russel without prejudice. *Id*. at *7. Lopez's Fourteenth Amendment deliberate indifference claim and negligence claim against Miller were permitted to proceed, and the Court granted leave to amend the claims dismissed without prejudice if he chose. *Id*. Mr. Lopez submitted an Amended Complaint, realleging claims against Miller, Russel, and "Nurses at Lehigh County Jail." (*See* ECF No. 11 at 3-4.) The Court will now dismiss all claims alleged against Russel and "Nurses." The remaining Fourteenth Amendment deliberate indifference and negligence claims alleged against Miller will proceed to service.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

In April 2025, Mr. Lopez was incarcerated in LCJ's "Unit 2A." (Am. Compl. at 6.) On or around April 18 and 21, Lopez noticed a small bump on his left buttock. (*Id.*) It started to get larger, and Lopez told his Unit Manager, Defendant Miller, about it. (*Id.*) Miller allegedly responded that it was not Miller's problem but a medical problem. (*Id.*) Lopez submitted multiple medical requests to PrimeCare on or about April 18 to 21 "to no avail" because the "slip was never returned to [him] nor was [he] ever seen about [his] medical problem."[2] (*Id.*) Lopez states that, according to the Inmate Guidelines on page 14, it is PrimeCare's policy for inmates to initiate care for any medical issues by filing a medical slip. (*Id.*) Lopez asserts that the nurses at LCJ, who are employed by PrimeCare, failed to see him, which violated that policy and led to the worsening of his condition, which required hospitalization. (*Id.*) He asserts that he continued to inform Miller and the nurses about his medical issue between April 18 to 21 and May 7, 2026. (*Id.*)

Lopez continued to work in the kitchen until May 7, 2025, when he informed the kitchen supervisors Krystal Forde and Mitchell Good that he was in severe pain and discomfort. (*Id.*) They instructed him to inform the officer on rotation, Miller. (*Id.*) Lopez asked Miller to call

[1] The allegations set forth in this Memorandum are taken from the Amended Complaint ("Am. Compl."). (*See* ECF No. 11). An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)). The Court adopts the pagination assigned by the CM/ECF docketing system.

[2] In a prior pleading, Lopez alleged that he submitted one medical request. (*See* ECF No. 2 at 4 (stating that he "filed out *a medical request* to (PrimeCare) on or about 4/18/25-4/21/25 to no avail because *the slip* was never returned to me nor was I ever seen.") (emphasis added).)

medical because of "excruciating pain," and he showed Miller his left buttock. (*Id.*) Miller allegedly refused to call medical and told Lopez to get back to work. (*Id.*)

After Lopez finished his shift at 6:30, he returned to 2A and waited for the medical cart to come around. (*Id.*) It arrived between 8 p.m. and 8:30 p.m., and Lopez told the nurse on duty, Chad, that he had been in agonizing pain since about April 18. (*Id.* at 6-7.) Lopez supposedly told Nurse Chad that he had submitted multiple medical slips stating that he could not walk or sleep, and could barely work due to his pain, but he had not been seen by anyone. (*Id.* at 7.) Nurse Chad sent Lopez to the medical unit. (*Id.*) In the medical unit, when Nurse Debra checked the wound, his entire left buttock was inflamed, red, hard, and hot to the touch all the way to the groin area. (*Id.*) Lopez had a fever of 100 degrees, his heart rate was irregular, and he was septic. (*Id.*) He required emergency hospitalization, where he received a CT scan, and surgery was performed. (*Id.* at 7, 9.) After four days, he was released from the hospital to LCJ. (*Id.* at 7.) He was not placed in medical isolation but was put in Unit 2B. (*Id.*) At that point, Lopez had "a gaping hole" on his left buttock that required wound care, but he was not called down consistently. (*Id.*) Approximately two months later, he was placed in the Segregated Housing Unit (SHU), and the nurses stopped taking him down to the medical unit for wound care. (*Id.*) Lopez then contracted a MRSA (Methicillin-Resistant Staphylococcus Aureus) infection. (*Id.*)

Lopez filed a grievance at LCJ, but it was denied because he failed to provide an event date and included too many issues in the one grievance. (*Id.* at 11.) He submitted an appeal of the decision on October 16, 2025, but Russel rejected it because he deemed that Lopez's medical care was appropriate. (*Id.*) Lopez's civil case in this Court followed.

After the Court issued its March 16, 2026 Memorandum and Order ruling on the original Complaint, the docket reflects that the Clerk of Court mailed Lopez a copy at his prison address. That mailing was returned to the Clerk as undeliverable on May 7. (ECF No. 7.) Lopez had left LCJ but had not provided the Court with a new address. Online databases indicated that Lopez was incarcerated again as of May 28, 2026, and the Court issued an Order to Show Cause on June 17, 2026, why the matter should not be dismissed. (ECF No. 8.) Lopez responded to the Order to Show Cause by submitting a change of address and a Response in which he explained that he had been released to a recovery house and had lost access to his paperwork. (ECF Nos. 9 at 1; ECF No. 10.) He indicated that he wished to continue the lawsuit and submitted the Amended Complaint to the Court shortly after that. (ECF No. 9 at 1; ECF No. 11.)

In his Amended Complaint, Mr. Lopez alleges claims for deliberate indifference to a serious medical need under the Fourteenth Amendment, and medical malpractice and "gross negligence" under state law.[3] (*Id*. at 4.) He seeks money damages and for all Defendants to be "properly remanded and held accountable." (*Id*. at 9.)

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), the court must screen the Amended Complaint and dismiss it if it is frivolous, malicious, fails to state a claim for relief, or seeks damages from an immune defendant. *Id.* § 1915(e)(2)(B)(i)-(iii). Whether an amended complaint fails to state a

[3] Mr. Lopez alleges that he was a pretrial detainee at the time of his infection. (*See* Am. Compl. at 5); *see also Commonwealth v. Lopez*, CP-39-CR-0000673-2025 (C.P. Lehigh). The Fourteenth Amendment governs his constitutional claim for deliberate indifference to a serious medical need. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (*per curiam*); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). At this stage, the Court accepts the facts alleged in Lopez's Amended Complaint as true, draws all reasonable inferences in his favor, and asks only whether the Amended Complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Lopez is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

### A. Fourteenth Amendment and Negligence Claims Against Miller

Mr. Lopez re-alleges the same factual allegations and legal claims in the Amended Complaint with respect to Miller that he raised in the original Complaint. Having previously decided that Lopez stated plausible claims for deliberate indifference under the Fourteenth Amendment, *see Farmer v. Brennan*, 511 U.S. 825, 835 (1994), and for negligence under state law, *see Vasquez v. Wingard*, 847 F. App'x 108, 111 (3d Cir. 2021), the Court will direct that these claims proceed to service. *See Lopez*, 2026 WL 734064, at *6.

### B. Claims Against Warden Russel

#### 1. Official Capacity Claims

Lopez has checked the box on the form Amended Complaint to indicate that he asserts his claims against Defendant Russel in his official capacity as well as in his individual capacity. (*See* Am. Compl. at 3.) Official capacity claims are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Lopez's claim against Russel in his official capacity is, therefore, a claim against Lehigh County. Local governments like Lehigh County can be liable as "persons" under § 1983, but this liability extends only to "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see also Monell*, 436 U.S. at 665-83. This limitation is based on the well-established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60; *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Rather, to state a § 1983 claim against a municipality, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Mr. Lopez has not alleged a plausible *Monell* claim against Lehigh County. While he attempts to identify a relevant PrimeCare policy regarding medical slips, (*see* Am. Compl. at 6), Lopez does not identify a custom or policy by the County that impacted his infection or how it was handled. *See McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009) (explaining that a plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard). Further, he does not allege (nor does anything in his Complaint suggest) that a custom or policy caused his injuries, or that the County's alleged failure to supervise or train employees caused him injury. *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) ("A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996))). As a result, his official capacity claim against Russel cannot survive screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and will be dismissed.

**2. Individual Capacity Claims**

**a. § 1983 Claims**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, meaning a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims brought against that defendant. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). In other words, "[e]ach Government official, his or her title notwithstanding, is only liable for his or her

*own* misconduct." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 677).

Mr. Lopez names Warden Russel as a defendant because he holds a position of supervisory authority in LCJ, but that is not a plausible basis for liability under § 1983. (*See* Am. Compl. at 8 (faulting Russel for "allowing the employees to place [Lopez] on a regular block, instead of a medical unit").) "[A] director cannot be held liable 'simply because of his position as the head of the [agency].'" *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Nor can liability under § 1983 be predicated on a respondeat superior basis. *See, e.g., Chavarriaga v. N.J. Dep't of Corr*., 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). Claims "against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). A supervisor may "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). A supervisor may also be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K.*, 372 F.3d at 586 (alteration in original)).

Mr. Lopez does not assert that Russel had any personal involvement in the events leading to his illness, hospitalization, and subsequent infection. *See Rode*, 845 F.2d at 1207. In his

Amended Complaint, Lopez blames Russel for "allowing his employees to place [Lopez] on a regular block, instead of a medical unit" when Lopez returned from the hospital. (Am. Compl. at 8.) However, this does not suffice as a foundation for supervisory liability under § 1983 where Lopez does not claim that Russel directed the actions of anyone else, or that he even had knowledge of or acquiesced in the actions of the prison employee responsible for Lopez's post-hospital placement. *See Barkes*, 766 F.3d at 316. Lopez also has not asserted that Russel maintained a custom or policy with deliberate indifference that directly contributed to his injury. *Id.* The § 1983 claims against Russel will accordingly be dismissed.[4]

**b. "Gross Negligence" Claim**

To the extent that Lopez attempts to assert a claim for "gross negligence" against Russel under state law, he has not stated a plausible claim. Lopez alleges that, due to gross negligence, Russel purportedly allowed the employees to place Lopez on a regular block after his return from the hospital. (Am. Compl. at 8.) However, claims of gross negligence against an employee of the county are barred by the provisions of the Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541-50 ("PSTCA"). Under the PSTCA, a local agency and its employees are granted immunity from tort liability, with certain narrow exceptions.[5] The Act

---

[4] As the Court explained in its prior Memorandum, the assertion that Russel violated Lopez's rights when he denied a grievance appeal does not assert a plausible basis for a § 1983 claim against Russel. *Lopez*, 2026 WL 734064, at *5. Participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *see also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").

[5] The Act defines a local agency to which the immunity provision applies as a "government unit other than the Commonwealth government." *See* 42 Pa. Cons. Stat. § 8501.

provides that a local agency is excepted from "liabil[ity] for any damages on account of any injury to a person or property caused by the act of the local agency or an employee thereof." 42 Pa. Cons. Stat. § 8541.28. The "defense of official immunity" applies to "[a]n employee of a local agency" sued in his or her individual capacity "only to the same extent as his employing local agency." *Id.* § 8545; *Milbourne v. Baker*, 2012 WL 1889148, at *5 (E.D. Pa. May 23, 2012) ("With respect to plaintiff's individual-capacity claim . . . the [PSTCA] states that employees of a local agency are entitled to the same immunity as their employer." (citing § 8545)).

However, the Act does not shield an employee against personal capacity claims where the employee has engaged in "a crime, actual fraud, or willful misconduct." *See* 42 Pa. Const. Stat. § 8550; *see also McNeal v. City of Easton*, 598 A.2d 638, 642 (Pa. Commw. Ct. 1991) (a "finding of 'willful misconduct' under § 8550 requires a party to have acted with even more than gross negligence or recklessness"); *Jackson v. City of Philadelphia*, No. 11-4643, 2015 WL 2070084, at *6 (E.D. Pa. May 4, 2015) ("Gross negligence or recklessness is insufficient to substantiate a finding of willful misconduct."); *Hernandez v. York County*, No. 06-1176, 2007 WL 4198017 (M.D. Pa. Nov. 26, 2007) (finding defendant immune under the PSTCA from claim of gross negligence), *aff'd*, 288 F. App'x 781 (3d Cir. 2008). The United States Court of Appeals for the Third Circuit has explained that "'willful misconduct' is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)).

---

Although Lehigh County is not named as a Defendant in this case, it falls within the definition of local agency.

Thus, with respect to negligence specifically, the PSTCA effectively bars all negligence actions against counties and their employees, unless brought under one of the enumerated statutory exceptions.[6] The exceptions to immunity are to be "strictly and narrowly construed." *Hanna v. Lehigh Cnty. Dep't of Corr.*, No. 22-4305, 2024 WL 1259269, at *8 (E.D. Pa. Mar. 25, 2024) (citing *Sugalski v. Commonwealth*, 569 A.2d 1017, 1019 (Pa. Commw. Ct. 1990)). As none of the exceptions are applicable to the facts alleged, and there are no factual allegations against Russel that would suggest he committed an intentional tort, any negligence claims against Russel will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

**C. Claims Against "Nurses at Lehigh County Jail"**

Lopez asserts that unidentified, unnamed "Nurses at Lehigh County Jail" failed to respond to his medical request slip(s) and did not adequately follow up on his wound care. (Am. Compl. at 6-8.) Lopez has not made any effort in the original or the Amended Complaint to name or otherwise describe any individual nurse who allegedly caused harm. Moreover, these allegations are undeveloped—for instance, it is not clear how many times Lopez made the medical request(s), when he did so, what was contained in the request(s), what interactions about wound care he purportedly had with nurses and when, and what (if anything) the nurses did after those interactions, so they cannot reflect deliberate indifference or negligence. "Generalized allegations that unspecified requests for care at unspecified times were ignored fall short" of stating a claim for deliberate indifference to a serious medical need. *Fletcher v. City of Philadelphia*, No. 26-CV-3777, 2026 WL 2244049, at *4 (E.D. Pa. Aug. 4, 2026) (citing first

[6] The exceptions to immunity are: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, (8) care, custody or control of animals, and (9) sexual abuse. *See* 42 Pa. Const. Stat. § 8542(b).

*Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)); and then citing *Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")); *see also Muhammad v. NJ. State Prison*, No. 25-2073, 2025 WL 3002062, at *1 (3d Cir. Oct. 27, 2025) (*per curiam*) (affirming dismissal of deliberate indifference claim where plaintiff "complained that his medical care was denied and delayed for a non-medical reason; however, he did not develop those allegations in any way"); *Folk*, 741 F. App'x at 52 (agreeing with appropriateness of dismissal of deliberate indifference claims that "contain[ed] no facts, only [plaintiff's] conclusions about the appropriateness of unidentified actions at unknown times"). Nor do they suffice for a negligence claim. *Johnson v. Jefferson Healthcare*, No. 25-4304, 2025 WL 2218940, at *3 (E.D. Pa. Aug. 4, 2025) (dismissing plaintiff's claims for negligence where claims were unclear and facts were underdeveloped). The claims against the "Nurses at Lehigh County Prison" will be dismissed.[7]

## IV. CONCLUSION

For the foregoing reasons, all claims alleged against Defendant Kyle A. Russel and "Nurses at Lehigh County Jail" will be dismissed with prejudice. The Court concludes that

[7] Mr. Lopez checked the box indicating that he intended to present claims against the nurses in their "official capacity", but such claims are not cognizable in any event because PrimeCare is a private entity. *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit") (citing *Owens v. Connections Cmty. Support Programs, Inc.,* 840 F. Supp. 2d 791, 796 (D. Del. 2012) ("Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit."). Accordingly, the claims against the Nurses at Lehigh County Jail alleged in their official capacity are flawed for that additional reason.

further attempts to amend these claims would be futile. *Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) (*per curiam*) ("[B]ecause Robinson has had two opportunities to amend his complaint, declining to grant further leave to amend was proper."). The Fourteenth Amendment deliberate indifference claim and negligence claim alleged against Reed Miller will be allowed to proceed at this time. An appropriate order detailing service of process follows.

**BY THE COURT:**

**/s/ Gerald Austin McHugh**

**GERALD A. MCHUGH, J.**